IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**BRUCE C. LEMMON**                                                                                       **PLAINTIFF**

**V.**                                        **CASE NO. 3:08CV00191 JMM**

**FLASH MARKET, INC.**                                                                              **DEFENDANT**

### ORDER

Pending before the Court are defendant's Motion for Summary Judgment and Supplemental Motion for Summary Judgment ("motions"). For the reasons stated below, the motions are granted in part and denied in part (#22, #26).

Plaintiff contends that defendant discriminated against him based upon his race, subjected him to a hostile work environment and disparate treatment, failed to promote him, and retaliated against him for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and 42 U.S.C. § 1981 when it leased to another party the store which plaintiff managed knowing plaintiff would not continue to be employed by the new management and in failing to transfer or rehire plaintiff after the store was leased. Defendant contends that plaintiff has failed to establish a *prima facie* case on any of his claims and that it has stated a legitimate non-discriminatory reason for not transferring him or rehiring him.

1

I. *Facts*

Defendant whose headquarters are in West Memphis, Arkansas, operates 150 gas and retail locations. The defendant owns 70 of these locations and leases some of its stations to other operators.

Plaintiff, an African American, who worked for defendant as a manager for eight years was terminated on February 28, 2008, from his position as store manager at defendant's store located at 714 Ingram Boulevard in West Memphis ("Ingram Boulevard Store") when defendant leased the store to another party and then failed to transfer him to another of its stores.

In 2006, plaintiff was designated as the store manager of Store #14 on Broadway in West Memphis, Arkansas (the "Broadway Store"). Plaintiff served as manager of the Broadway Store approximately one year. Plaintiff testified that he did not have any problems or disputes with defendant during the year he managed the Broadway Store, and that he received satisfactory performance evaluations during that year.

Harold Patterson, defendant's president testified that in 2001 through 2004 he reported to plaintiff's supervisors that there were customer complaints regarding the way that plaintiff treated customers and employees during the time he managed the Broadway Store. Plaintiff contends that, while manager of that store, his evaluations did not contain any criticism regarding his style of management.

Defendant contends that as a manager, plaintiff had the ability and responsibility for hiring and firing the employees who worked at the Broadway Store. Plaintiff alleges that when he was assigned as the manager at the Broadway Store there were two whites employees and five black employees. He also alleges he was told by Cliff Lafitte, his supervisor, that (1) the

Broadway Store was one of Patterson's first stores. (2) there were a lot of upscale people such as business people, teachers, doctors and lawyers that came in that store, (3) Lafitte did not want plaintiff to hire all blacks in that store because different people wanted to be waited on by different people.  Plaintiff claims that the customer base at the Broadway Store was primarily Caucasian.

On March 2, 2007, plaintiff was transferred to the Ingram Boulevard Store.  At the time of this transfer, Marvin Scott who is African American was plaintiff's district manager, and Lafitte was plaintiff's area manager.  Patterson testified that plaintiff was moved to the Ingram Boulevard Store because it was a "tough store" in the African-American community and because defendant did not have anyone else in the company who could run the store in the manner plaintiff did.  He also testified that plaintiff "did a good job down there."

Plaintiff claims Lafitte was "a tremendous help" in running the Ingram Boulevard Store.  Patterson testified that he received and reporting to plaintiff's supervisors customer complaints regarding the way in plaintiff treated customers and employees during the time plaintiff  managed the Ingram Boulevard Store in 2007.  Lafitte agreed that plaintiff ran the store well.

Plaintiff contends that other employees referred to the Ingram Boulevard Store as the "ghetto" or "hood" store.  He also alleges that at one time, Jamie Patterson, who is Caucasian and the son of Patterson made racially offensive remarks to plaintiff.

When plaintiff managed the Broadway Store, he supervised deli employee Theressa Bedford.  He testified that he talked with Bedford about her applying for a managerial position.  On or about December 18, 2007, Bedford filed a Charge with the Equal Employment Opportunity Commission ("EEOC") alleging that defendant discriminated

against her on the basis of race by failing to promote her to deli manager.  Bedford filed a discrimination suit against defendant which currently is pending in the United States District Court for the Eastern District of Arkansas styled *Bedford v. Flash Market*, Case No.3:08-CV-00192-SWW.

Sometime between December 28, 2007, and February 8, 2008,  Lafitte spoke to plaintiff about Bedford's EEOC Charge.  Lafitte asked plaintiff if he could give any information as to whether Bedford had been overlooked for a management position.  Lafitte testified that plaintiff told him that Bedford was a good cook and that she had responded well to him.

Plaintiff contends that Lafitte told him that plaintiff's belief that Bedford was a good employee was not the same belief held by other employees.  Lafitte said he was expecting Lemmon to confirm what these other employees were saying about Bedford.   Plaintiff alleges that Lafitte told him twice that they were not on the same page.

Plaintiff contends that he assured Lafitte that they were on the same page, but that plaintiff really did not understand what page Lafitte wanted plaintiff to be on, and that the conversation ended after Lafitte told plaintiff they were not on the same page.  Plaintiff stated that Lafitte's tone became harsh and his manner became persistent and intimidating as Lafitte insisted they were not on the same page.  Lafitte testified that he did not discuss his conversation with anyone before February 28, 2008.  Plaintiff says that the conversation took place over a speaker phone and he heard a voice that sounded like Richard Bevers's voice in Lafitte's office.  Bevers was plaintiff's area manager.

page

Patterson decides whether certain stores should be leased out, remodeled, or reorganized to include food service. Plaintiff alleges that leased stores were usually located in the African-American community and disputes defendant's statement that Patterson acts alone in deciding whether a certain store will be leased. Patterson was aware of LaFitte and plaintiff's conversation regarding Bedford after February 28, 2008. Patterson testified that he knew during the negotiations regarding the lease of the Ingram Boulevard Store that the lessee would not retain plaintiff.

Lafitte asked about employees when he heard the Ingram Boulevard Store would be leased, and was told that defendant was not to solicit or retain any employees from the Ingram Boulevard Store including plaintiff. At 6:00 a.m. on February 28, 2008, plaintiff met Bevers and Lafitte at the Ingram Boulevard Store where Lafitte told all the employees at the Ingram Boulevard Store that he would not be able to keep any of them as employees of defendant.

After plaintiff learned that the Ingram Boulevard Street Store was leased to a third party, he clearly communicated to Lafitte and Bevers that he would step into any position, even one with lower pay. He was repeatedly told that defendant did not have any manager positions or positions at his current pay grade available. Plaintiff stated to Lafitte, "Well, am I not ever re-hireable?" Plaintiff testified that Lafitte said, "No, I wouldn't say never."

On that same day, plaintiff left the Ingram Boulevard Store, went to an ATM, and drew $100.00 out because one of the employees borrowed $100.00 the night before, and he wanted the books and everything to be right when he left. He returned to the Ingram Boulevard Store and repaid the $100.00 by giving it to Lafitte.

Plaintiff admits that permitting an employee to borrow money out of the register without first obtaining the permission of the district or division manager violated defendant's policy and that plaintiff was in violation of that policy.

Lafitte believed that plaintiff told Bevers sometime after February 28, 2008, that he was not interested in staying in the convenience store business. Plaintiff denies that he made this statement to Bevers.

Defendant contends that plaintiff has not applied for employment since February 28, 2008. Plaintiff contests this statement pointing to Lafitte's testimony that Lafitte had several calls from plaintiff after his position was eliminated. Plaintiff stated in his deposition that "Well, and to be honest with you, if Flash Market had a position available for me and they wanted me to be with the company, they would have contacted me." *Id.* at 59.

Plaintiff rehired or reassigned eight Caucasian employees in the West Memphis area during 2008 and 2009.

Plaintiff's EEOC Charge is dated May 31, 2008, and it alleges that defendant retaliated against him from February 7, 2008, to February 27, 2008, because he did not provide favorable information regarding another of defendant's employee's EEOC complaint.

II. *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Seymour v. City of Des Moines*, 519 F.3d 790, 796 (8th Cir. 2008); Fed. R. Civ. P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Where a motion for summary judgment is properly made and supported an opposing party must set forth specific facts showing a genuine issue for trial.  *See* Fed.R.Civ.P. 56(e)(2).

When there is no direct evidence of discrimination, as in this case, courts apply the framework provided by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Takele v. Mayo Clinic*, 576 F.3d 834 (8th Cir. 2009) (burden-shifting analysis prescribed by McDonnell Douglas Corp. v. Green applied to Title VII and § 1981 claims).  Under the *McDonnell Douglas* analysis, the plaintiff must establish a *prima facie* case of discrimination. *Id.*   If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant  to articulate a legitimate, non-discriminatory reason for its action. *Id.* (citing *Qamhiyah v. Iowa State Univ. of Sci. and Tech.*, 566 F.3d 733, 745 (8th Cir. 2009).   If the defendant makes such a showing, the plaintiff must then demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination. *Id.*

A.  *Title VII*

Plaintiff's Title VII claim of retaliation has two parts: defendant retaliated against him when it leased the Ingram Boulevard Store knowing that the new management would not retain him and that defendant retaliated against him when it failed to transfer him to a new store or to rehire him after February 28, 2008.

To make out a *prima facie* retaliation case under Title VII  an employee must show that he (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action.  *See Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006).  Here, there is evidence that plaintiff was perceived as supporting Bedford's EEOC charge.  Moreover, it is not in dispute that plaintiff suffered an

adverse employment action. It is disputed, however, whether there was a connection between the two.

The closeness in time between plaintiff being questioned about Bedford's EEOC charge and the lease of the Ingram Boulevard Store, and plaintiff being told that he was not eligible for transfer or re-hire is evidence that there was such a connection. *See Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 715-16 (8th Cir. 2000) (requisite causal connection may be proved circumstantially by showing the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive).

Lafitte's affidavit states that he did not tell anyone about his conversation with plaintiff regarding Bedford's EEOC charge before February 28, 2008. Patterson testified that he had knowledge of Bedford's EEOC charge and of Lafitte's conversation with plaintiff after plaintiff left his employment on February 28, 2008. There is evidence, based upon plaintiff's testimony, that Bevers was aware of the conversation before February 28, 2008. The Court finds that plaintiff has established a *prima facie* case of retaliation under Title VII.

Patterson testified that the decision to lease one of defendant's stores is based upon the profit or loss of that store. Patterson testified that plaintiff's perceived support of Bedford or Bedford's EEOC charge had nothing to do with his decision to lease the store to another party who chose not to retain plaintiff as manager.

Plaintiff has failed to come forward with any evidence that the leasing of the Ingram Boulevard Store was in any way connected to his perceived support of Bedford's EEOC charge and has, thus, failed to present evidence of pretext. Plaintiff's Title VII retaliation claim based upon defendant's leasing of the Ingram Boulevard Store is without merit and defendant's

motions are granted on this issue (#22, #26).

Defendant's stated reason for not transferring plaintiff, as it had done in the past, to another store after it had leased the Ingram Boulevard Store on February 28, 2008, or rehiring plaintiff after February 28, 2008, was because it did not have any manager positions available and that there were no positions available at plaintiff's pay-grade.

Plaintiff has produced evidence that would support a finding of pretext:
(1) there were available management position available after February 28, 2008; (2) there were positions available after plaintiff offered to take lower paying positions; and (3) plaintiff was more qualified that the eight employees either re-hired or reassigned in the West Memphis area during 2008 and 2009.  Defendant's motions on plaintiff's Title VII retaliation claim based upon defendant's actions after February 28, 2008, are denied (#22, #26)

.	To the extent that plaintiff is making a claim pursuant to Title VII based upon racial discrimination, disparate treatment, and failure to promote based upon race, defendant's motions are granted as plaintiff  failed to exhaust these claims (#22, #26).

To the extent that plaintiff is making a Title VII hostile work environment claim, defendant's motions are granted as plaintiff has failed to state such a claim (#22, #26).  All of the evidence presented on the issue of hostile work environment relates to race which is an unexhausted claim.  Plaintiff has presented insufficient evidence that plaintiff was subjected to a hostile work environment based upon his perceived support of Bedford's EEOC claim.

B. *42 U.S.C. § 1981*

Plaintiff brings hostile work environment, retaliation, and racial discrimination claims pursuant to § 1981.[1]

In order to establish a *prima facie* case of racial discrimination under § 1981, a plaintiff must show: (1) he is a member of a protected class; (2) he is qualified for the position; (3) adverse employment action; and (4) some evidence that would allow the inference of improper motivation. *Barge v. Anheuser-Bush, Inc.,* 87 F.3d 256, 258 (8th Cir. 1996).

Plaintiff's testimony regarding the assignment of managers, the lack of support staff offered African-American managers, and the leasing and management of stores located in predominantly African-American neighborhoods supports an inference of improper motivation. Defendant has also presented evidence of derogatory racial remarks made to him during the course of his employment. Moreover, for the purposes of this claim, the Court has considered the evidence that the eight employees either rehired or reassigned in the West Memphis area during 2008 and 2009, who plaintiff contends were less qualified than him, were Caucasian.

To establish a § 1981 race-based hostile work environment claim, plaintiff must establish that (1) he was a member of a protected group; (2) he was subjected to unwelcome race-based harassment; (3) the harassment was because of his membership in the protected group; and (4) the harassment affected a term, condition, or privilege of his employment. *Elmahdi v. Marriott Hotel Serv., Inc.*, 339 F.3d 645, 652 (8th Cir. 2003).

---

[1]Plaintiff is not required to file an EEOC charge to exhaust her claim before filing a § 1981 claim. *See Bainbridge v. Loffredo Gardens, Inc*., 378 F.3d 756, 760 (8th Cir. 2004).

To establish a *prima facie* case of retaliation under 42 U.S.C. § 1981, plaintiff must show that he "engaged in statutorily protected activity," that defendant "took adverse employment action against him," and that "there is a causal connection between the two events." *See McClure v. Career Systems Development Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006) (citing *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 760 (8th Cir. 2004)).

For the same reasons as stated above regarding plaintiff's § 1981 racial discrimination claim and his Title VII retaliation claim, defendant's motions are denied on plaintiff's hostile work environment and retaliation claims (#22, #26).

III. *Conclusion*

Defendant's motions are granted on plaintiff's retaliation claim based upon defendant's leasing of the Ingram Boulevard Store and on plaintiff's Title VII claims of race discrimination, disparate treatment, failure to promote, and hostile work environment and these claims are dismissed. Defendant's motions on plaintiff's Title VII retaliation claim and plaintiff's § 1981 racial discrimination, hostile work environment, and retaliation claims are denied.

IT IS SO ORDERED THIS  4  day of  March , 2010.

_____
James M. Moody
United States District Judge